**TROUTMAN SANDERS LLP**
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6227
*Attorneys for Defendant Portfolio Recovery Associates, LLC*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DEBORAH MIGDAL, <br> *on behalf of herself and those similarly situated,* <br><br> Plaintiff, <br><br> -v- <br><br> PORTFOLIO RECOVERY ASSOCIATES, LLC <br><br> Defendant. | Civil Action No. 2:16-cv-04750 |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO COMPEL ARBITRATION AND DISMISS THIS ACTION**

Motion Day: June 5, 2017

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ..................................................................1

FACTUAL BACKGROUND.....................................................................2

ARGUMENT ..........................................................................................5

    I.    THE FEDERAL ARBITRATION ACT REQUIRES THAT
        THE INSTANT CASE BE DISMISSED AND THAT THE
        COURT COMPEL ARBITRATION OF THIS DISPUTE ...............5

        A.    Standard of Review................................................5

        B.    The Arbitration Provision in the Agreement Should Be
                Enforced ..................................................................7

            1.    The FAA and Georgia Law Requires Enforcement
                  of the Arbitration Provision.............................8

            2.    Plaintiff's Claims Fall Within the Scope of the
                  Arbitration Provision .....................................11

            3.    Plaintiff's Claims Must Be Arbitrated on an
                  Individual Basis Based on the Express Provisions
                  of the Arbitration Provision...........................14

        C.    Plaintiff Has Failed, Neglected, or Refused to Arbitrate.........16

        D.    PRA's Status As An Assignee of Synchrony Permits
                Enforcement of the Arbitration Provision ...........................16

    II.   THE COURT SHOULD DISMISS THIS ACTION OR, IN
        THE ALTERNATIVE, STAY FUTURE PROCEEDINGS .............17

CONCLUSION ......................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Ackerberg v. Citicorp USA, Inc.*,
   898 F. Supp. 2d 1172, 1175, 1177 (N.D. Cal. 2012)......................................8, 10

*Agostino v. Quest Diagnostics Inc.*,
   256 F.R.D. 437, 460 (D.N.J. 2009).......................................................................9

*Allied-Bruce Terminix Cos. v. Dobson*,
   513 U.S. 265, 277 (1995)......................................................................................6

*American Express Co. v. Italian Colors Rest.*,
   133 S. Ct. 2304, 2312 (2013).............................................................................14

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333, 346 (2011)..............................................................................5, 6, 14

*AT&T Techs. v. Commc'ns Workers of Am.*,
   475 U.S. 643, 649-50 (1986) ........................................................................6, 11, 12

*Bazemore v. Jefferson Capital Sys., LLC*,
   827 F.3d 1325, 1329 (11th Cir. 2016) .................................................................8

*Bazemore v. Jefferson Capital Sys., LLC*,
   No. CV 314-115, 2015 U.S. Dist. LEXIS 61491, at *10 (S.D. Ga. May
   11, 2015) .............................................................................................................17

*Bellows v. Midland Credit Mgmt.*,
   No. 09-cv-1951, 2011 U.S. Dist. LEXIS 48237, at *9-11 (S.D. Cal. May
   4, 2011) ...............................................................................................................17

*Caley v. Gulfstream Aero. Corp.*,
   428 F.3d 1359, 1367 (11th Cir. 2005) .................................................................6

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213, 218 (1985).....................................................................................8

*Ellin v. Credit One Bank*,
    No. 15-2694(FLW), 2015 U.S. Dist. LEXIS 153533, at *6 (D.N.J. Nov.
    12, 2015) ........................................................................................................10

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938, 944 (1995)..............................................................................8, 12

*Forestal Guarani S.A. v. Daros Int'l, Inc.*,
    613 F.3d 395, 401 (3d Cir. 2010) .......................................................................9

*Frankel v. Shearson Lehman Bros., Inc.*,
    Civil Action No. 86-2520, 1987 U.S. Dist. LEXIS 16099, at *9 (D.N.J.
    Oct. 30, 1987) ....................................................................................................7

*Gates v. Northland Grp., Inc.*,
    No. 1:16-cv-01492-NLH-AMD, 2017 U.S. Dist. LEXIS 23884, at *6
    (D.N.J. Feb. 21, 2017) ......................................................................13, 15, 17

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79, 92 (2000)........................................................................................7

*Honig v. Comcast of Ga. I, LLC*,
    537 F. Supp. 2d 1277, 1283-84 (N.D. Ga. 2008) .............................................10

*Houston v. Elan Fin. Servs.*,
    135 F. Supp. 3d 1375 (S.D.Ga 2015) ..........................................................10, 11

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79, 83-85 (2002) ................................................................................12

*HT of Highlands Ranch, Inc. v. Hollywood Tanning Sys.*,
    590 F. Supp. 2d 677, 684 (D.N.J. 2008)............................................................17

*Jenkins v. First Am. Cash Advance of Ga.*,
    LLC, 400 F.3d 868 (11th Cir. 2005)............................................................11, 15

*Katchen v. Smith Barney, Inc.*,
    Civil Action No. 04-3762 (JLL), 2005 U.S. Dist. LEXIS 16408, at *18
    (D.N.J. Aug. 2, 2005)........................................................................................18

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
  313 U.S. 487, 496 (1941)....................................................................................9

*Knight v. Docu-Fax, Inc.,*
  838 F. Supp. 1579, 1583 (N.D. Ga. 1993)........................................................13

*Langfitt v. Jackson,*
  644 S.E.2d 460, 465 (Ga. Ct. App. 2007).........................................................11

*Livingston v. Assocs. Finance, Inc.,*
  339 F.3d 553, 558-59 (7th Cir. 2003)..................................................................6

*Lloyd v. Hovensa, LLC,*
  369 F.3d 263, 269 (3d Cir. 2004) ......................................................................17

*Losapio v. Comcast Corp.,*
  No. 1:10-CV-3438-RWS, 2011 U.S. Dist. LEXIS 42257, at *9 (N.D. Ga.
  Apr. 18, 2011) ....................................................................................................10

*Mastrobuono v. Shearson Lehman Hutton, Inc.,*
  514 U.S. 52, 53-54 (1995) ...................................................................................6

*Medford v. Lapolla Indus.,*
  No. 3:09-CV-061 (CDL), 2009 U.S. Dist. LEXIS 67568, at *5 (M.D. Ga.
  Aug. 3, 2009) ......................................................................................................13

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
  473 U.S. 614, 626-27 (1985) ...............................................................................6

*Moses J. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1, 24 (1983)...............................................................................6, 7, 18

*Noble v. Samsung Elecs. Am., Inc.,*
  No. 16-1903, 2017 U.S. App. LEXIS 3841, at *5 (3d Cir. Mar. 3, 2017) ..........7

*Pate v. Melvin Williams Manufactured Homes (In re Pate),*
  198 B.R. 841, 844 (Bankr. S.D. Ga. 1996).........................................................17

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
  388 U.S. 395, 401 (1967)......................................................................................6

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela,*
    991 F.2d 42, 46 n.6 ...................................................................................9

*Randolph v. Green Tree Fin. Corp.,*
    244 F.3d 814, 815 (11th Cir. 2001) ....................................................15

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63, 69 (2010)..........................................................................12

*Schiano v. MBNA*,
    Civil Action No. 05-CV-1771 (JLL), 2005 U.S. Dist. LEXIS 35606, at
    *13 (D.N.J. Dec. 19, 2005) .....................................................................6

*Shapiro v. Baker & Taylor, Inc.,*
    No. 07-3153 (MLC), 2009 U.S. Dist. LEXIS 48187, at *38 (D.N.J. June
    9, 2009) ...................................................................................................13

*Shearson/Am. Express v. McMahon*,
    482 U.S. 220, 226 (1987).........................................................................5

*Shubert v. Wells Fargo Auto Fin., Inc.*,
    No. 08-3754 (NLH), 2008 U.S. Dist. LEXIS 105198, at *18 (D.N.J. Dec.
    31, 2008) .................................................................................................15

*Smith v. Steinkamp*,
    No. IP01-1290, 2002 U.S. Dist. LEXIS 11227 (S.D. Ind. May 22, 2002),
    *aff'd*, 318 F.3d 775 (7th Cir. 2003)......................................................13

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*,
    559 U.S. 662, 684 (2010).......................................................................14

*Thompson v. Midland Funding, LLC*,
    1:10-cv-312, 2011 U.S. Dist. LEXIS 85746, at *7 (N.D. Miss. Aug. 3,
    2011) .......................................................................................................17

*Tickanen v. Harris & Harris, Ltd.*,
    461 F. Supp. 2d 863, 869-71 (E.D. Wis. 2006)...................................17

*Volt Info. Scis, Inc. v. Bd. of Trs of Leland Stanford Junior Univ.*,
    489 U.S. 468, 478 (1989)................................................................7, 14

*Walthour v. Chipio Windshield Repair, LLC*,
  745 F.3d 1326, 1331 (11th Cir. 2014) ................................................7

*Zambrana v. Pressler & Pressler, LLP*,
  No. 16-CV-2907 (VEC), 2016 U.S. Dist. LEXIS 166722, at *14
  (S.D.N.Y. Dec. 2, 2016) ................................................17

**STATUTES**

9 U.S.C §§ 1 *et seq.* ................................................1

9 U.S.C. § 2 ................................................5, 9

9 U.S.C. § 3 ................................................18

9 U.S.C. § 4 ................................................5

**OTHER AUTHORITIES**

Restatement (Second) of Conflict of Laws § 188 ................................................9

## **PRELIMINARY STATEMENT**

The allegations set forth in the class action Complaint filed by Plaintiff Deborah Migdal ("Plaintiff") against Portfolio Recovery Associates, LLC ("PRA") fall squarely within the scope of the arbitration provision to which Plaintiff agreed under her Synchrony Bank  ("Synchrony") credit card account (the "Account"), an Account on which she subsequently defaulted.  PRA, as assignee of the original creditor, has demanded arbitration pursuant to the applicable Retail Installment Credit Agreement ("Cardmember Agreement"), the terms of which include: (1) an arbitration agreement governed by and enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C §§ 1 *et seq.* that allows either party to the Agreement to move for binding arbitration of any claim or dispute arising out of the Agreement; and (2) a class action waiver that requires Plaintiff to arbitrate her claims against PRA on an individual, non-class basis.  Because Plaintiff's allegations are covered by this written arbitration agreement, Plaintiff is required to arbitrate her claims brought in this lawsuit against PRA under the FAA.

Despite the fact that PRA has notified Plaintiff of its intent to elect arbitration, and has provided evidence showing that Plaintiff's Account and her allegations fall within the scope of the arbitration agreement, Plaintiff has nonetheless refused to arbitrate.  Because this case should proceed only in arbitration, PRA requests that the Court dismiss this action and order Plaintiff to

arbitrate her claims on an individual, non-class basis pursuant to the Cardmember Agreement.

## **FACTUAL BACKGROUND**

On August 4, 2016, Plaintiff filed this putative class action, asserting claims against PRA under the Fair Debt Collection Practices Act ("FDCPA").  (Compl. *passim*.)  As Plaintiff noted in her Complaint, she opened an Account issued by Synchrony with the last four digits 5176.  Plaintiff's last payment on her Account occurred on September 18, 2009, and subsequently defaulted on her Account in October 2009.  (Compl. ¶¶ 25-26.)

Upon investigation into Plaintiff's allegations, PRA learned that Plaintiff's Account is governed by the Cardmember Agreement which governs the parties' relationship.  *See* **Exhibit A** as attached hereto.  The terms of the Cardmember Agreement specifically apply to Plaintiff's relationship to any subsequent assignees of Synchrony, such as PRA, as it states that "[w]e may sell, assign or transfer all or any portion of your Account or any balances due under your Account without prior notice to [Plaintiff]."  (Exhibit A at pg. 3).  The Cardmember Agreement further states that the contractual relationship between the parties was to be governed and interpreted "in accordance with the laws of the State of Georgia . . . and applicable federal law." (*Id.*).

The Cardmember Agreement contains a straightforward Arbitration Provision, set out in all capital letters, and emphasizing in relevant part that:

> IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM, OR TO ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PROVIDED FOR IN THE APPLICABLE ARBITRATION RULES.  FURTHER YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION.  EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. NOTE THAT OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.

(*Id.* at pg. 3).

By its terms, this provision was: (1) "binding" on the parties; (2) made "pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act;" and (3) applied to any disputes between Plaintiff and Synchrony, as well as any "predecessors, successors, assigns." (*Id.*).  Either party may elect binding arbitration of any claim, dispute, or controversy "arising from or relating [Plaintiff's] Cardmember Agreement (*Id.*).[1]  The arbitration provision also specifically prohibits the arbitration of class action claims, and provides that

---

[1]     The term "Claim" is defined to include any "Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement" and "the term Claim is to be given the broadest possible meaning."  (*Id.*).

Plaintiff waives her right to act as either a Class Representative or Member. (*Id.*).[2]

On January 23, 2017, PRA provided Plaintiff with notice of its intent to arbitrate Plaintiff's claim on an individual basis as well as a copy of the Cardmember Agreement. PRA's Notice is attached hereto as **Exhibit B**. PRA subsequently informed the Court at a January 25, 2017 Status Conference of its intent to invoke the Arbitration Provision. At the request of Plaintiff, and upon discussion with Magistrate Judge Dickson, PRA agreed to provide a business records affidavit from the original creditor, Synchrony, evidencing that the previously produced Cardmember Agreement was applicable to Plaintiff's Account. PRA subsequently provided a business record affidavit from Synchrony Bank authenticating the Agreement as applicable to Plaintiff on April 11, 2017. See **Exhibit C** as attached hereto. Notwithstanding receipt of the affidavit and the express terms of the Agreement, Plaintiff has not agreed to arbitrate her claims. Plaintiff has provided no specific basis for its refusal to honor the terms of the Agreement and arbitrate the claims.

Simply stated, because Plaintiff's claims arise out of PRA's alleged attempts to collect on Plaintiff's defaulted Account, they fall squarely within the scope of the Arbitration Provision. (Compl. ¶¶ 32, 35-36).

---

[2]     Plaintiff agreed to all of these terms by making purchases on the Account. (Compl. ¶¶ 14-15.). On or about August 27, 2011, Synchrony sold Plaintiff's Account to PRA. (Compl. ¶¶ 14-15.).

## **ARGUMENT**

## I.   **THE FEDERAL ARBITRATION ACT REQUIRES THAT THE INSTANT CASE BE DISMISSED AND THAT THE COURT COMPEL ARBITRATION OF THIS DISPUTE.**

### A.   **Standard of Review**

As noted above, the written Arbitration Provision provides that it will be governed by the FAA.  (Exh. 2 at p. 4.)  The FAA represents a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (internal citations omitted).  Pursuant to Section 4 of the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.

The FAA governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts.  *Concepcion*, 563 U.S. at 344.  Section 2 of the FAA mandates that arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  An arbitration agreement governed by the FAA is presumed to be valid and enforceable.  *See Shearson/Am.*

5

*Express v. McMahon*, 482 U.S. 220, 226 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985).   Indeed, this strong language manifests a "liberal federal policy favoring arbitration agreements." *Moses J. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Schiano v. MBNA*, Civil Action No. 05-CV-1771 (JLL), 2005 U.S. Dist. LEXIS 35606, at *13 (D.N.J. Dec. 19, 2005); *Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005).

The Supreme Court has made clear that the FAA applies to any transaction directly or indirectly affecting interstate commerce.  *Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967).  Under the FAA, "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms."  *Concepcion*, 563 U.S. at 339.  "The overarching purpose of the FAA, evident in the text of §§ 2, 3 and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id.* at 344; *accord Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995).

The enforceability of an arbitration clause is a matter of law for the courts to decide.  *See AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649-50 (1986); *Livingston v. Assocs. Finance, Inc.*, 339 F.3d 553, 558-59 (7th Cir. 2003)

("having found the arbitration agreement enforceable [, a court] must give full force to its terms"). The party resisting arbitration bears the burden of demonstrating that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000). Courts have long interpreted the FAA with a "healthy regard for the federal policy favoring arbitration," and "any doubts concerning the scope of arbitration issues should be resolved in favor of arbitration." *Frankel v. Shearson Lehman Bros., Inc.*, Civil Action No. 86-2520, 1987 U.S. Dist. LEXIS 16099, at *9 (D.N.J. Oct. 30, 1987) (quoting *Moses*, 460 U.S. at 24-25); *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1331 (11th Cir. 2014). Once a court determines that a valid agreement to arbitrate exists and that covers the dispute at issue, the FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

### B.    The Arbitration Provision in the Agreement Should Be Enforced

Under the FAA, a claim is arbitrable when there is (1) a valid arbitration agreement, and (2) when the arbitration clause applies to the claim at issue. *Noble v. Samsung Elecs. Am., Inc.*, No. 16-1903, 2017 U.S. App. LEXIS 3841, at *5 (3d Cir. Mar. 3, 2017). Both of these requirements are easily satisfied here.

### 1.    The FAA and Georgia Law Requires Enforcement of the Arbitration Provision

By opening the Account and entering into the Agreement with Synchrony (incorporated in Delaware), Plaintiff (who resides in Bergen County, New Jersey), *see* Compl. ¶ 4, was a party to a transaction affecting interstate commerce. *See Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172, 1175, 1177 (N.D. Cal. 2012) (compelling arbitration under the FAA based on arbitration clause contained in credit card agreement between citizens of different states). Accordingly, the FAA governs, as is reflected in the language of the Arbitration Provision itself. Therefore, the Court must give effect to the plain terms of the Arbitration Provision, which is presumed to be valid and enforceable. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration") (emphasis in original).

Furthermore, "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see Ackerberg,* 898 F. Supp. 2d 1172 ("[t]he validity of an arbitration agreement is determined under ordinary principles of state contract law"); *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (same). Here, Georgia law should be applied to

8

determine the enforceability of the Arbitration Provision because Georgia is the location which created the underlying obligations at issue in this case. Moreover, Arbitration Provision is enforceable under Georgia law.

To determine which state's substantive contract law applies, the Court sitting in diversity applies the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); *see also Progressive Cas. In. Co. v. C.A. Reaseguradora Nacional de Venezuela,* 991 F.2d 42, 46 n.6 (conducting choice of law analysis to determine which state's contract defenses apply to arbitration agreement under FAA Section 2"). Under New Jersey choice-of-law rules, the standard applied in contract claims is the "most significant relationship" test enunciated in the Restatement (Second) of Conflict of Laws § 188. *Forestal Guarani S.A. v. Daros Int'l, Inc.,* 613 F.3d 395, 401 (3d Cir. 2010); *Agostino v. Quest Diagnostics Inc.,* 256 F.R.D. 437, 460 (D.N.J. 2009).  Here, the Second Restatement points squarely towards the application of Georgia law.[3]

---

[3]     Under Section 188 of the Restatement, courts consider: "(1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws § 188; Forestal, 613 F.3d at 401.  Here, the Agreement explicitly states that "this agreement is entered between [Synchrony] and [Plaintiff] in Georgia.  We make all decision about granting credit to you from, extend credit to you under this agreement from, and accept you payments in Georgia."  Accepting the express statements in the Agreement as true, the first four of the Restatement §188 factors are fulfilled.  Only the last factor favors a finding of a law other than Georgia applies.  Furthermore, the Agreement

Moreover, Georgia law mandates that Plaintiff's use of the Account bound her to the terms of the Agreement. *Houston v. Elan Fin. Servs.*, 135 F. Supp. 3d 1375, 1380 (S.D. Ga. 2015) (plaintiff's use of the "credit card thus signified two major concessions: (1) that he accepted and agreed to the terms of the [agreement]; and (2) that he consented to the entry of a formal and binding contract."); *Losapio v. Comcast Corp.*, No. 1:10-CV-3438-RWS, 2011 U.S. Dist. LEXIS 42257, at *9 (N.D. Ga. Apr. 18, 2011) ("valid contracts, including contracts containing arbitration clauses, may be formed by a party's continued use or acceptance of services without objection.") (citing *Honig v. Comcast of Ga. I, LLC*, 537 F. Supp. 2d 1277, 1283-84 (N.D. Ga. 2008)). Other courts have found the same. *See also Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172, 1176 (N.D. Cal. 2012) ("Numerous courts have found that continued use or failure to opt out of a card account after the issuer provides a change in terms, including an arbitration agreement, evidences the cardholder's acceptance of those terms.") (citations omitted); *Ellin v. Credit One Bank*, No. 15-2694(FLW), 2015 U.S. Dist. LEXIS 153533, at *6 (D.N.J. Nov. 12, 2015) ("finding that defendant cardholder was bound by the arbitration clause in the cardholder agreement because, it has

---

contained a choice of law clause providing that the Agreement was "governed by and construed in accordance with the laws of the State of Georgia . . . applicable federal law."  (Exh. 2 at p. 4.)

long been recognized that in such situations, use of a credit card signifies acceptance of the terms of the credit agreement") (citations omitted).

Here, Plaintiff used the Synchrony credit card and made payments to Synchrony for that use. (Exh. 1; Compl. ¶ 15, 24.) In so doing, Plaintiff agreed to the terms of the Agreement. *See Houston,* 135 F. Supp. 3d at 1380. Plaintiff's Account is subject to the Agreement, including its Arbitration Provision.

Georgia law provides that "FAA preempts any state law that conflicts with its provisions or undermines the enforcement of private arbitration agreements." *Langfitt v. Jackson*, 644 S.E.2d 460, 465 (Ga. Ct. App. 2007). Furthermore, Georgia courts have held that arbitration provisions similar to those here are enforceable. *See Jenkins v. First Am. Cash Advance of Ga.,* LLC, 400 F.3d 868 (11th Cir. 2005) (see infra. I.B.3.) Accordingly, the arbitration clause is enforceable under governing Georgia law.

## 2. *Plaintiff's Claims Fall Within the Scope of the Arbitration Provision*

The broad language of the binding Arbitration Provision plainly covers Plaintiff's claims. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (an order to arbitrate "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute"). And where, as here, the Arbitration Provision is broad, there is a presumption of arbitrability such that

'"[i]n the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."' *AT&T Techs.*, 475 U.S. at 650.

As an initial matter, under the terms of the Agreement, any disputes as to whether Plaintiff's claims fall within the scope of the Arbitration Provision and/or whether some defense to arbitration may apply are themselves reserved for decision by the arbitrator. (Exh. 2 at p. 4.) In particular, the Arbitration Provision states that "'Claims' means any claim . . . including the validity, enforceability or scope of this Arbitration Provision" are subject to arbitration. (*Id.*) An agreement to arbitrate "gateway" issues of arbitrability is enforceable. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability' . . . .") (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-85 (2002)); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (noting that where evidence of intent to arbitrate arbitrability is "clear and unmistakable," district courts should not decide the issue). Thus, because a valid arbitration agreement exists, any dispute over the question of whether Plaintiff's claims against PRA are arbitrable is properly determined by the arbitrator.

More fundamentally, Plaintiff's claims relate directly to PRA's conduct in trying to recover funds owed under the Agreement. (Compl. *passim*.) And, the

12

covered "Claims" under the Arbitration Provision include any action relating to the use of the Account, including those regarding claims for payment. (Exh 2 at p. 3.) Plaintiff's claims, which challenge PRA's attempt to collect on Plaintiff's defaulted Account, undoubtedly relate to the Agreement and the relationship established by the Agreement. *Shapiro v. Baker & Taylor, Inc.,* No. 07-3153 (MLC), 2009 U.S. Dist. LEXIS 48187, at *38 (D.N.J. June 9, 2009) ("arising out of or relating to language to be indicative of a broad arbitration provision") (citation omitted); *Knight v. Docu-Fax, Inc.*, 838 F. Supp. 1579, 1583 (N.D. Ga. 1993) (same); *Medford v. Lapolla Indus.*, No. 3:09-CV-061 (CDL), 2009 U.S. Dist. LEXIS 67568, at *5 (M.D. Ga. Aug. 3, 2009). Federal courts routinely mandate the arbitration of the types of claims at issue in this case with respect to similar terms and conditions. *See, e.g., Gates v. Northland Grp., Inc.*, No. 1:16-cv-01492-NLH-AMD, 2017 U.S. Dist. LEXIS 23884, at *6 (D.N.J. Feb. 21, 2017) (court enforced arbitration provision in FDCPA case); *Fedetov v. Peter T. Roach & Assocs.*, No. 03-cv-8823, 2006 U.S. Dist. LEXIS 11422 (S.D.N.Y. Mar. 16, 2006) (compelling arbitration of FDCPA class action against debt collector based upon arbitration agreement with creditor); *Smith v. Steinkamp*, No. IP01-1290, 2002 U.S. Dist. LEXIS 11227 (S.D. Ind. May 22, 2002) (same), *aff'd*, 318 F.3d 775 (7th Cir. 2003). Accordingly, Plaintiff's claims must be submitted to arbitration.

### 3.    Plaintiff's Claims Must Be Arbitrated on an Individual Basis Based on the Express Provisions of the Arbitration Provision

There is a strong federal policy in favor of enforcing all provisions of arbitration agreements in accordance with their terms. *See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford, Jr. Univ.* 489 U.S. 468, 479 (1989). Thus, "parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit *with whom* a party will arbitrate its disputes." *See Concepcion*, 563 U.S. at 344 (emphasis in original). "[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) (emphasis in original). This jurisprudence has been reinforced by the Supreme Court. For example, in *American Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2312 (2013), the Court held that a credit card agreement with the plaintiff that required the parties to individually arbitrate any "class action" claim arising out of card use required that the civil action be submitted to binding arbitration. *Id.* at 2308-12 ("[T]he FAA's command to enforce arbitration agreements trumps any interest in ensuring the prosecution of low-value claims")

The class action waiver which is prominently disclosed in capitalized and bold type in the Arbitration Provision (Exhibit A at p. 3) is likewise enforceable according to its terms. Courts have consistently upheld and enforced similar class

14

action waivers in arbitration agreements. *Shubert v. Wells Fargo Auto Fin., Inc.*, No. 08-3754 (NLH), 2008 U.S. Dist. LEXIS 105198, at *18 (D.N.J. Dec. 31, 2008) (finding "that Plaintiff's class action waiver is valid and enforceable under the FAA, even if it is unconscionable under New Jersey law, because New Jersey law on this issue is preempted by the FAA."); *Gates*, 2017 U.S. Dist. LEXIS 23884 at *6 (court enforced class action waiver in FDCPA case). Georgia Courts have approved arbitration provisions similar to the Arbitration Provision in this case. In *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868 (11th Cir. 2005) the court held that plaintiff had to comply with an arbitration agreement containing a class action waiver and prohibited the defendant's right to compel arbitration if plaintiff filed her complaint in small claims court. 400 F.3d at 872; *see also Randolph v. Green Tree Fin. Corp.*, 244 F.3d 814, 815 (11th Cir. 2001) (enforcing arbitration clause containing a class action waiver).

Here, as discussed, above Plaintiff's valid Arbitration Provision covers her claims against PRA. (*See* supra Section III.B.2.) The Arbitration Provision expressly precludes any class claims stating, "YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION." (Exhibit A at p. 3) (capitalization in original). Because the

Arbitration Provision precludes class claims, this Court should compel Plaintiff to proceed to arbitration on an individual basis.

### C.    <u>**Plaintiff Has Failed, Neglected, or Refused to Arbitrate**</u>

As noted above, PRA sent Plaintiff's counsel the Arbitration Provision and requested that Plaintiff submit her claims to arbitration.  Plaintiff, however, refused to select an arbitration administrator and has generally refused to submit to arbitration.  Plaintiff has failed, neglected, or refused to arbitrate her claims against PRA as required by the Cardmember Agreement.  Thus, PRA respectfully requests that the Court compel Plaintiff to arbitrate all purported claims asserted against PRA in accordance with and pursuant to the terms of the Arbitration Provision.

### D.    <u>**PRA's Status As An Assignee of Synchrony Permits Enforcement of the Arbitration Provision**</u>

PRA's status as an assignee of Synchrony's rights under the Agreement does not affect the foregoing analysis.  The Agreement makes clear, in multiple places, that it applies with equal force to any "assignee" of the Plaintiff's Account, and that its unambiguous provisions apply to all affiliated entities and/or agents of the assignee.  (*See* Exhibit A at p. 4.)  Indeed, the Arbitration Provision provides: "[a]s solely used in this Arbitration Provision, the terms "we" and "us" shall for all purposes means [Synchrony] and all . . . successors, [and] assigns."

In fact, courts nationwide have consistently held that the assignee of a bank can compel arbitration as an assignee of debt in response to claims challenging

collection practices. *See, e.g.*, *Bazemore v. Jefferson Capital Sys., LLC*, No. CV 314-115, 2015 U.S. Dist. LEXIS 61491, at \*10 (S.D. Ga. May 11, 2015); *Pate v. Melvin Williams Manufactured Homes (In re Pate)*, 198 B.R. 841, 844 (Bankr. S.D. Ga. 1996); *HT of Highlands Ranch, Inc. v. Hollywood Tanning Sys.*, 590 F. Supp. 2d 677, 684 (D.N.J. 2008); *Tickanen v. Harris & Harris, Ltd.*, 461 F. Supp. 2d 863, 869-71 (E.D. Wis. 2006); *Zambrana v. Pressler & Pressler, LLP*, No. 16-CV-2907 (VEC), 2016 U.S. Dist. LEXIS 166722, at \*14 (S.D.N.Y. Dec. 2, 2016); *Thompson v. Midland Funding, LLC*, 1:10-cv-312, 2011 U.S. Dist. LEXIS 85746, at \*7 (N.D. Miss. Aug. 3, 2011); *Bellows v. Midland Credit Mgmt.*, No. 09-cv-1951, 2011 U.S. Dist. LEXIS 48237, at \*9-11 (S.D. Cal. May 4, 2011)  Thus, PRA is within its rights to also demand arbitration under the Agreement for the claims asserted by Plaintiff.

## II.    THE COURT SHOULD DISMISS THIS ACTION OR, IN THE ALTERNATIVE, STAY FUTURE PROCEEDINGS

Courts in the District of New Jersey have observed that the court can dismiss a case in favor of arbitration where no party requests a stay of the proceedings and all claims are arbitrable.  *Gates v. Northland Grp., Inc.*, No. 1:16-cv-01492-NLH-AMD, 2017 U.S. Dist. LEXIS 23884, at \*7 (D.N.J. Feb. 21, 2017) (citing *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004)).  *Soucy*, 2015 U.S. Dist. LEXIS 9991, at \*17 (citing *Johnson*, 928 F. Supp. 2d at 1009).  Here, all of the Plaintiff's claims are subject to resolution through the Arbitration Provision, and may not be

reinstated in court; therefore, the Court's lacks jurisdiction and staying the action would serve no purpose. Accordingly, this Court should dismiss this action when it compels arbitration.

In the event this Court is unwilling to dismiss the instant action, PRA requests that the Court stay further proceedings pursuant to the FAA. *See* 9 U.S.C. § 3 ("[T]he court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .") (emphasis added). In addition to the plain language of the FAA, controlling Supreme Court precedent requires courts to grant stays under § 3 of the FAA. *Moses*, 460 U.S. at 26. Because Plaintiff's claims against PRA are subject to arbitration, these proceedings against PRA should be stayed if they are not dismissed. *See Katchen v. Smith Barney, Inc.,* Civil Action No. 04-3762 (JLL), 2005 U.S. Dist. LEXIS 16408, at *18 (D.N.J. Aug. 2, 2005) (adhering to express language in the FAA statute requiring a stay).

## **CONCLUSION**

Plaintiff's claims against PRA are subject to the Arbitration Provision and must be submitted to arbitration on an individual basis. Because all of the requirements to compel arbitration have been satisfied, PRA respectfully requests

that the Court compel Plaintiff to arbitrate her claims in the appropriate forum,

dismiss this action, and grant PRA such other and further relief as this Court deems

appropriate and just.

Dated:  April 28, 2017                    Respectfully submitted,
                                          TROUTMAN SANDERS LLP

                                          By:  *s/ Amanda L. Genovese*
                                          Amanda L. Genovese
                                          875 Third Avenue
                                          New York, New York 10022
                                          Tel:    (212) 704-6227
                                          Fax:    (212) 704-6288
                                          amanda.genovese@troutmansanders.com
                                          *Attorney for Defendant Portfolio Recovery*
                                          *Associates, LLC*